All right. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the 2nd District is now open, pursuant to adjournment. The Honorable Michael J. Burke presiding. Please be seated. Your Honor, this is the first case of the morning for all. 2-11-5-3-5, consolidated with 2-11-7-8-2. People's State of Illinois v. Gerald L. Johnson. On behalf of the appellant, Ms. Jazmine Eakin. On behalf of the appellate, Mr. Richard Blum. Thank you. Ms. Eakin. May it please the Court, my name is Jazmine Eakin, and I represent the appellant, Daryl Johnson. For purposes of this argument, I intend to focus on the ineffective assistance of counsel claim, because that issue is at the center of what went wrong in this case. But I would be happy to answer questions, of course, on the other issues as well. Mr. Johnson was charged separately for the offense of misdemeanor domestic battery, and for the felony offense of unlawful use of a weapon by a felon. His attorney decided to join those charges for purposes of trial. Because of counsel's decision to do so, the jury was allowed to consider otherwise inadmissible propensity evidence against Mr. Johnson in the weapons case, and otherwise inadmissible evidence that he was a convicted felon in the domestic battery case. So counsel himself asked for joinder, correct? Yes, Your Honor. And probably, inevitably, you're going to have to respond to the question maybe now. Tell us succinctly why that's outside the realm of trial strategy. In this case, counsel's decision to join the charges was not sound trial strategy. And the record reveals that it wasn't sound trial strategy. The state, prior to trial, filed a motion to introduce evidence of prior acts of domestic violence to show Mr. Johnson's propensity to commit the domestic battery in this case. Now, that evidence was only admissible in the domestic battery case pursuant to statute, which allows such evidence as an exception to the longstanding rule against other crimes evidence that prior acts of other crimes evidence is not admissible to show propensity. And that's not because other crimes evidence is not prohibitive, but it's the opposite. It tends to overpersuade. So but for counsel's decision to join the charges, that propensity evidence would have not been admitted in his felony weapons case. So now you've got the jury in a weapons charge hearing that the defendant has instances of domestic violence, ostensibly have no relevance to the UUW by felon, right? That's correct, Your Honor. And your argument also with respect to the testimony about the threats? The testimony about the threats? Yes, Your Honor. In addition to allowing evidence of the prior acts of domestic violence for propensity, the court also said that there were alleged prior threats made by my client to kill the complainant and to have a shootout with police and kill the police, her and himself. The court found that those statements were not admissible as propensity evidence under the statute, but that they were admissible to show why Ms. Hausler had not previously reported those incidents. But in essence, what the court allowed this evidence for was to bolster her credibility. Before the question of whether or not there was going to be a question as to why she reported ever arose. I mean, this all happened in the context of ruling on the state's motion in Liminate to introduce this evidence, the propensity evidence at trial. When the joint motion for Joinder was made, did the defense counsel illuminate or offer any reasons why he wanted to do what was seemingly mixing up two irrelevant charges? No, Your Honor. The only discussion was there was a comment made, and to be honest, I can't recollect if this comment was made by defense counsel or the state, that the cases had been following each other in the court. And that they were set for trial on the same day. Yes, that's right, that they were set for trial on the same day. That was basically the reasoning. The state did allude to the fact that she made a vague reference to the domestic battery occurred, and through further investigation they found it gone. But the facts of the case show that that didn't show that the cases were of such a comprehensive criminal transaction that they should have been joined for trial. Your argument so far has been that Joinder of these two charges was prejudicial to your claim. Yes, Your Honor. Were these two charges subject to Joinder at all? No, they were not subject to Joinder. Why not? Because there's a test, right? I mean, there's elements you have to consider. There are elements that you have to consider. Their proximity in time and location. Ms. Hauser knew of this gun in her home in December of 2009, but she chose not to report it to the police. The incident, the domestic battery incident that Mr. Johnson was charged with, occurred on April 29, 2010. So they weren't linked by time. Well, he was still in constructive possession when the battery took place, correct? I mean, it's arguably. But there's no evidence that links the domestic battery. Well, that's one of the other elements. I'm talking about proximity of time and location. It's the same house where both things happened. Right. And when the domestic battery happened, at least arguably your client was in constructive possession of that weapon. Well, in that regard, again, yes, arguably he would be. I guess that would be an argument that the state could make at trial. But it doesn't go to the fact that the charges should be joined because, again, there's no evidentiary link between the fact that the gun was found in the home and the domestic battery that he was on trial for, where there was no evidence that any type of gun was used in the incident or that he threatened to use a gun. There was simply no overlap between the two offenses. You've actually segued into the second factor. You segued into the second factor. Well, in the first issue, you would argue that just constructive possession isn't enough for proximity because the gun was in his room, the April domestic battery took place in a different part of the house. So even though it's the same house, is that your position? Right. The location itself of the fact that both took place in the same location is not enough to infer. Proximity means much closer than just in the same house. Is that your position? Yes, yes, exactly. In fact, I cited a case in People v. Lewis, which involved two unrelated murder charges, but the victims were found in the same location, but that wasn't enough to show that the incident should have been, in that case, it was ineffective assistance of counsel for failing to sever the cases because that wasn't enough to show that they were part of the same transaction such that they should have been joined. When the attorneys moved jointly to join these charges for trial, did the trial judge express any reservations about the joinder? Was there any colloquy about the joinder? There really wasn't that much discussion about the joinder. The only concern that the trial court expressed was, you know, I need to have this, I want an order saying that you have agreed to join the charges, and there was a written order, and basically the written order said that the parties have agreed to join the charges for purposes of trial. But beyond that, they went straight from, the irony is that they went straight from deciding to join the charges to then the hearing on the motion to eliminate, or at least the counsels are presenting their motions to eliminate, including defense counsel's motion to eliminate to exclude the evidence of the prior domestic violence because it was too prejudicial. All right, so the defense counsel initially had a motion to exclude the joinder, or this evidence that was a subject to then the joinder motion, correct? He didn't want that to be heard together. No, he didn't, he just didn't, she, I'm sorry, she did not want the evidence, she did this pretty much standard motion to eliminate to exclude the evidence of prior acts of domestic violence as just being too prejudicial. So she didn't want the evidence in at all. At all, for any purpose. For any purpose. And she also recognized the prejudice stemming from the admission of Mr. Johnson's prior felony conviction for the unlawful use of weapons charge. And she was successful in obtaining a ruling barring its use for impeachment purposes. And she simply stipulated to the fact of his prior conviction so that the actual nature of the offense wouldn't be revealed to the jury for purposes of the unlawful use of weapons case. But had the, I mean, the problem is, is with the joinder, the jury would, in the domestic battery case, would have never heard that he was a convicted felon. Absent the joinder. That was only relevant to the unlawful use of weapons case. So again, when she approached to agree to join, she didn't give any explanation on the record or proper, any reason why she was going along with this joinder? No, Your Honor. Okay. It's just the record just contradicts that this was based on some type of trial strategy. I mean, she joins the cases, and yet then she moves to exclude all of this evidence. And the easiest way to exclude the evidence, at least as to each of the other charges, was to have kept the charges separate. But her agreement to join those issues, even before the court ruled on whether the evidence was admissible or not, was inconsistent with her purported strategy to try to keep the evidence out. Now, in its brief, the state relies on the defendant's closing argument to try to come up with a reasonable strategy for counsel's decision to join the charges. However, Strickland instructs us that in evaluating counsel's conduct, we must make, every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of her challenged conduct, and to evaluate the conduct from counsel's perspective at the time. And I would suggest to you that the state's position is one that's distorted by hindsight, because it's just not supported by the record. The state contends that because the jury was required to resolve issues of credibility between Mr. Johnson and Ms. Hausler, she may have thought she could maximize the number of incidents of Ms. Hausler's purported inconsistent or implausible testimony by joining the charges together. However, if you look at her closing argument, it's actually at that point she decides, I'm going to separate these cases. And she tells the jury, first, because that's what the state did. The state started with, here's the evidence we have for the domestic battery, and here's the evidence we have for the unlawful use of weapons. And so counsel said, you know, I'm going to do what the state did. And she started arguing, she basically argued for the domestic battery issue, she said this came down to who the jury would believe, Ms. Hausler or Mr. Johnson. But her argument about the unlawful use of weapons charge was more that the state's evidence was insufficient to support their theory that Mr. Johnson constructively possessed the gun found in Ms. Hausler's home. She really relied more on the undisputed facts that the gun was found in Ms. Hausler's home, that there was evidence that other people had access to the room where the gun was found. And as she said, most importantly, that the fingerprint that was found on the gun did not match Mr. Johnson. So it's almost as if she presented two different defenses or two different approaches to the cases. But she did challenge the credibility of the UUW case, too, though. I mean, there was some challenge to credibility on the UUW for not reporting it sooner and things like that, not reporting that she had seen the gun sooner. Right. There was some, her challenge, yes, there was challenge to that, that she, when she initially found the gun, she has a son who's a police officer, and he told her to report it to the police and that she didn't. However, that line of questioning was separate from her questioning of the credibility as to the domestic battery incident and the prior incident. So that line of questioning could have come in without having joined the charges and opening up consideration of all the other prior domestic battery evidence against Mr. Hausler in his unlawful use of weapons case. Now, you indicated you didn't, just moving ahead for a second, you indicated you didn't want to specifically comment on the other crimes evidence instruction. Did you indicate that? No, I'd be happy to talk about that as well. I mean, the other crimes instruction in this case pretty much just magnified counsel's error because it instructed the jury generally that it could consider all evidence, all the evidence that came in of other conduct by the defendant, which would include all the other crimes evidence and his prior conviction, frankly, and that they could all consider it all for propensity. I mean, this is exactly what the rule against other crimes evidence is designed to be. And the instruction was not consistent with IPI. It wasn't a standard IPI instruction. No, it was not. And I think the problem is that they tried to fashion what would be a limiting instruction, but what is a limiting instruction when the evidence that's coming in is propensity? I mean, how do you limit propensity evidence? How do you tell the jury only consider the prior domestic violence for propensity as to the domestic battery in this case, but don't consider it as propensity in the unlawful use of weapons. In fact, don't consider it in the unlawful use of weapons at all and only consider that he's a convicted felon in the unlawful use of weapons case, but don't wall that off from the domestic battery case. I mean, how do you do that? It's already out there. That's right. How do you do that as a practical matter? And, in fact, the judge pretty much threw up his hands. I mean, he said when he looked at the instruction for the last time, he said, you know, it probably could be reworked, but it's just too complicated, so this is how we're going to give it. Well, if it's too complicated for the judge and if it's too complicated for the parties, how is the jury supposed to sort through all of this? Let me ask you a very candid question. Is it your position that either of the errors, the error of joining the unrelated charges or the error of the instruction would be sufficient to constitute a reversible error, or is your argument it's in combination or is your argument both? Your Honor, in fact, in my brief I make both. I think each error on its own constitutes reversible error, but I also include an error because they do all fit together, frankly, that cumulatively certainly this was very prejudicial to my client. Therefore, because of counsel's error, my client was denied his right to a fair trial, and we ask that you reverse and remand for two separate trials. Thank you. Thank you, counsel. You'll have time for rebuttal. Mr. London, you may proceed. May it please the Court, counsel, Richard London on behalf of the people of the State of Illinois. Your Honors, addressing the first issue, defendant acknowledges that counsel engaged in trial strategy. The question is, could any reasonable attorney have engaged in that same strategy? Because, again, there's no question it was trial strategy. What was the strategy you're concluding there? What represented? What was the strategy? Well, if you're asking me what counsel specifically thought, I can't tell you. We never can. In other than rare instances where we have a post-trial motion arguing an effective assistance of counsel, or if you're on PC arguing that same, we can know exactly what counsel thought. The question, though, is, is there a reasonable trial strategy? And what would it be? And the response is yes, definitely. And it would be? It would be that you had a he said, she said circumstance. The only resolution of guilt or innocence would be based on credibility. The best method of determining who was more credible would be by allowing repeated instances of arguably lack of credibility of the victim. By allowing evidence relating to her failure to report prior instances of domestic violence, there's an argument that this current instance wasn't accurate. Actually, in this case, which is not always the case, defendant took the stand, said this incident happened, but gives a very different explanation. He put his arms around her. He did sort of pull her in front of him because he claims that's the way he needed to see, that he has to have somebody in front of him, but it was a loving hug. He never put his hands around her throat. Let me ask you this. Had he testified, I believe it's clear to me in the record and the arguments, that because the prior conviction, prior felony conviction, was more than 10 years, he could not have been impeached with that if he took the stand? Correct. And the people acknowledge that the prior conviction would not have come in in the domestic battery. So he could have testified without the juror, in prior effect, knowing about this. Correct. Now, by joining this, the jury now knows in addition to these alleged volatile and violent threats, he's also a convicted felon. Correct. You don't think that tips the scales at all? The question is not in any instance would that be proper. The question is in balancing the chance of getting defendant off on both cases. And let's face it, the UUW felon is the more serious case. By bringing in the domestic violence alleged inconsistencies, he had a better chance of getting off in the UUW. Tell me how this strategy bolsters the defendant's credibility. Because you said it was a credibility issue. The strategy doesn't necessarily bolster defendants and attacks the victims, thereby implicitly. But by doing that, doesn't it severely undermine the defendant's credibility? Not in the UUW felon. It's one trial. Yes, I understand. That's the problem here is it's one trial. It is one trial. So when evidence comes in, it comes in. No question. But if we're looking at, again, trial strategy, is there a strategic reason to have agreed to join in one trial? And the answer is yes. The strategic reason is what would the outcome have been in two separate trials? And that's what it boils down to. Any time, even if you assume that joinder is improper, obviously this court has found that you look at what would the outcome have been in separate trials. Well, if that's the strategy, why wouldn't there be a limiting instruction on the use of this prior felony? Because basically the prior felony comes in in the trial court when it comes in, when there's a stipulation to the prior felony. There probably should have been. Well, I mean, one of the counsel's arguments is we take all these things together and the jury was basically instructed that it could consider the prior Cook County felony conviction as propensity evidence in the domestic death. Arguably could have. And the people agree that there should have been an instruction. We argue that basically that is waived, not just normal waiver, by failing to object, but in this case, specifically acquiescing. And that's the doctrine of invited error. Invited error doesn't simply mean, as defendant argues, that you have to present that instruction. Invited error means you acquiesce or consent to it. Here, the people would disagree with defendant's characterization of what the discussion was relating to the limiting instruction on three separate circumstances. The judge clearly displayed some concern with the given instruction and said to defense counsel initially, prior to trial, do you accept this? What do you think? Yes, we do. Prior to the jury instruction, well, during jury instruction conference, judge specifically said, I'm trying to figure out a method of coming up with a more specific limiting instruction. What do you think? And counsel said, well, you know, it's confusing. I'm not sure. It was confusing. In a perfect world, should there have been a limiting instruction? Yes. That's not the question. The question is, was this instruction in this case the cause of finding defendant guilty? And the answer is no. Well, what if it's not the cause? Can it be considered in combination with the other? Is it a contributing enough factor but for a reasonable probability? It's in the mix, obviously, when you're looking at the whole thing. No question it's in the mix. The question, though, is not, could it be a factor? And, again, we disagree with the defendants that it is plausible that it's a factor. The factor is, is there a reasonable probability? And we say, and the people would opine, that the evidence of each of the crimes was more than strong enough to have convicted, even if these were to be tried separately. Well, let's talk about that for a second, focusing in on the UUW by Fellow. Your opponent alluded to there was a fingerprint on the weapon that was clearly not the defendant. There was evidence somebody else who was in the house may have had the weapon. There are actually two possible. All right. So I think defense counsel going into the trial may have some legitimate arguments, and then the jury finds out, if this trial was separate, the jury would not have known that the person, the defendant in front of them who's alleged to be in possession illegally of a weapon, also is alleged to be a violent, volatile personality. You don't think that prejudices him? It would be if the defense, if the jury wouldn't have found that out. As the people argue in a brief, they would have. How would they have? The evidence of the threats, the prior crime, the other crime evidence, would have come in in the UUW to demonstrate constructive possession. How do you know it's defendant's gun? Well, it's defendant's gun because on one prior occasion, I confronted defendant and said, please take this gun out. Well, he didn't, obviously, if it's allegedly here and you're claiming it is. Why didn't you? I didn't because on two other instances, he threatened me with a shootout.  And obviously, we're not arguing that he possessed the gun at the time of the domestic violence incident, the charge incident. But the other uncharged incidents would have come in. Well, were there other threats that he made that did involve a weapon? Weren't there evidence of other threats that didn't involve a weapon? No. The judge, the trial judge incorrectly actually found. And again, I can't say I completely blame the trial judge because the trial judge actually did a really good job a very careful, thorough job of going over the prior statements line by line and saying, here's what I'm going to allow in. Here's what I'm going to take out. Here's what I'm going to allow in for propensity. Here's what I'm going to allow in for other crimes, general other crimes evidence. However, the testimony at trial, which defense even acknowledges on page 25 of their opening brief, is that she testified that during one of the episodes, Johnson told her he'd kill her if she ever called the police. During the other, he argued about the shootout. Those were the exact instances that the trial judge allowed in under the propensity statute. He said, I'll kill you if you call the police. Did he say, I'll shoot you if you call the police? I honestly don't recall the specific language. Well, why couldn't that have come in? Why couldn't the judge have allowed it in the threat if it didn't reference a weapon? That may have been, I believe the trial testimony incorporated that the threat was by gun. I'm not 100% positive about that. Because if it comes in, does it come in for propensity evidence? In the UUW? No. In the UUW, it would be constructive possession if it did relate to a gun. Clearly, the other instance, though, was gun-related. So you have at least one instance of a threat with a gun to a shootout. I'm going to shoot the police. I'm going to shoot you. I'm going to shoot myself. And you have the victim saying, please get this gun out of my house. So that would have come in regardless. But again, not as propensity evidence. We're talking about reasonable probability. But there's also another part of that, and that is whether or not all of these things, including the instructional error, rendered the proceedings fundamentally unfair. We've got a lot of other crimes evidence coming in for all kinds of different purposes, but it's all lumped into one bag of propensity, where the jury could consider a felony conviction, as well as these threats and all kinds of other crimes evidence, as propensity evidence. How does that not render these proceedings fundamentally unfair? To my point, I would disagree with the characterization that there was a ton of other crimes evidence. There was a relatively small amount. But the more important question is, how could it all be there under at least the potential guides of propensity and not be prejudicial? And then that's where we get into the concept of invited error. And again, the presumption that counsel decided this carefully and said the potential error of admission for other reasons was outweighed by the benefit that we have of being able to show that the victim was lying. The victim lacked credibility. Why? By showing that in the domestic violence case, she didn't report other evidence. And in the UUW case, by arguing she was incredible, because why not report the gun on the day of the incident? You've looked at the transcript as to when this joinder took place. Yes. I mean, it reads as if basically we have the trial date set on both of these at the same time. Why don't we just knock them both out at the same time? You're talking about the sound strategy where the attorney sat down and really thought this all through, and I don't know that the record bears that out. It sure seems like they just wanted to get these things both done at the same time, because you had the same defendant sitting there. Obviously, at any point in time, you can posit what the possibilities are. On a direct appeal, without having challenged the ineffective assistance at trial in a post-trial motion, or as I said, on PC, where theoretically you can re-raise this issue, where you're specifically saying defense counsel didn't have a strategy, all we're doing is guessing. Well, on that line, then, why don't you respond to counsel's argument that we do have an idea of what the strategy was, the way counsel argued the closing argument? The concept of moving to get rid of evidence, or have evidence not admitted, is not in any way mutually exclusive with the concept of joinder. We don't know if counsel, assuming as happened, you know, it is quite likely that counsel assumed that this was properly admissible. Because you filed a motion, obviously it doesn't mean that you think it will be successful. We don't know, and we'll never know, if the motion to admit other crimes evidence, or exclude other crimes evidence, was granted, and this evidence was left out, if counsel would have then moved to sever. So, I don't know that we, my understanding is it was the same day. An order wasn't entered until later that day. So, while counsel at that particular day said, yeah, we're agreeing, well, they knew that the motion to exclude evidence or admit evidence was going to follow immediately. We don't know what would have happened in the instance of, it wasn't a separate day. I would have agreed that that would be a stronger argument. If counsel moved to join a month before, and then you have a later hearing, where counsel said, well, I'm going to roll the dice. I don't know what's going to happen. But in this case, it all happened, you know, it wasn't so cut and dry about the sequence. It was all pretty much at the same time. I'm sorry to join the issue for the moment. You're conceding the instruction that was given was not consistent with IPM? Correct. And again, I think all of the, the people tried to craft something. The judge clearly expressed a concern. I don't think there's any dispute in that. Defense counsel looked at it and said, for whatever reason, I think it would be more confusing to the jury if we attempt a limiting instruction. The question, I... Counsel, where's the line between ineffective assistance and invited error? Interesting question. You raised it. Can you have ineffective assistance if you invite error? I guess theoretically possible. I think that basically it, in essence, is almost a higher standard, a higher burden that a defendant has to prove because you can't completely isolate the two. You can't say we're going to evaluate effective assistance or lack thereof based on, you know, just a mere failure to consider. It was highlighted. So we have to, again, assume not only was the error invited, but again, trial strategy. So I guess the question is, could any conceivable attorney have felt that it was appropriate or not inappropriate to give this instruction? And here we have a specific reason. It might not have been the right one. I may not have made that decision. You've made that argument three times now. The question is, where's the line? The line is that is there a reasonable probability that but for counsel's actions. I mean, obviously, that is always going to be the response. And the people would believe that in this case, that even though the instruction was not crafted properly, it wasn't but for that error that he was found guilty. He was found guilty because the evidence of his guilt was more than sufficient because you had a victim that stated A, he stated B, or black and white, and the jury believed the credibility of that witness. Thank you, Mr. Warner. Thank you. Ms. Eakin, rebuttal argument. If you could start off by commenting on counsel's argument, whether or not this instruction issue was invited error. Your Honor, to the extent that this is invited error, it's invited by counsel's error in joining the charges. That's how it's invited error. Once the charges were these two unrelated charges, one which has a special evidentiary rule allowing propensity evidence, and the other which prohibits propensity evidence. Once those two were joined together, what was the instruction that really could have been given in this case? What effective instruction could have limited the jury's consideration properly of this evidence? I mean, is it an effective assistance of counsel that she didn't ask for an instruction at the time that the evidence came in? It's been found to be reasonable not to do so because you don't want to highlight. Did she want to highlight to the jury in the middle of the trial? You can use this evidence for propensity. Was it unreasonable for her at the time that the state tendered this instruction because this was the state's evidence that they wanted in for propensity and they wanted to direct the jury that you can consider it for that purpose? Was it unreasonable strategy for her to fail to object to that? What would she have offered? At that point, the error or the confusion, as she said, and the complication, as the judge said, stemmed from the fact of her error in joining the charges. That's how it's invited error. And in this case, where the instruction is defective on its face, this is exactly what plain error is designed to address because with plain error, you're looking, the risk is that the jury has been wrongly instructed as to the applicable principles of law. And clearly in this case, that instruction directed the jury to consider all of this evidence as propensity evidence against the defendant in both cases, improperly so. Counsel, on the UUW charge as it relates to the prejudice prong of the ineffective assistance test, he had sort of an interesting response to your argument. He says, well, maybe in the UUW charge normally you wouldn't have these threats coming in, but he is arguing they would have come in anyway to prove up the UUW in this case. What's your response to that argument? First of all, Your Honor, you pointed out, it's true, that one of the threats was just he threatened to kill me. That was separate. That was on one incident. It had nothing to do with a gun. And that could have come in. That would not have brought in the weapons necessarily. That wouldn't have come in in the unlawful use of weapons case. In terms of whether the statement he threatened a shootout would have come in, the problem with now in hindsight saying that that would have come in to show his knowledge of the gun is that at the hearing on assessing whether or not that statement should have come in, the weighing process was as to whether it should have come in in the domestic battery. And counsel could have had a good argument at that point to say, if the discussion was, well, the evidence of the shootout goes to his knowledge, I think counsel could have had an argument to say, we still weigh probative versus prejudice. And in this domestic battery that he's on trial for or this UUW that he's on trial for, at that time there's no evidence that he was threatening a shootout or there's no testimony at that time that he was doing so. And counsel could have argued that evidence that the defendant was going to shoot and kill police officers was so inflammatory and so prejudicial it shouldn't have been admitted. But the problem is we didn't have that weighing process here. So I don't think you can just say, oh, that would have been admitted anyway. That's not – I don't think that that's necessarily the case. Why are we separating out the threats from the domestic violence incidents themselves? I mean, it's all part of the same incident. It is part of the same incident, but even under the statute 115-7.4, you have to show that the prior incidents are factually similar. And the court found that the threats themselves did not necessarily – they were threats of future harm. They didn't necessarily go to the domestic violence incidents. They didn't go to propensity. That's what the court found. And so in this case where there were no threats to kill and certainly no threats to shoot at police officers, I think that you could look back to the statute and say that they weren't similar factually. And so those components of that evidence should not have been admitted. The only other point that, Your Honors, I'd like to raise is that the state has repeatedly tried to come up with a strategy and said, well, counsel had a strategy and we can't get into her mind at the time. But, again, Strickland instructs that you look at the circumstances of counsel's conduct at the time and at her perspective at the time. And at the time, the decision to join, again, a charge that opens the door to allowing propensity evidence with a charge that wouldn't allow it at all cannot be considered a sound trial strategy. Thank you, Your Honors. Thank you, counsel, for the argument. The case will be taken under advisement with the decision rather than due course. Thank you, Your Honors.